for the Sixth Circuit is now in session. All persons having business before this honorable court, draw near, give attention, and ye shall be heard. God save the United States in this honorable court. Please be seated. Case number 15-8013, Nathan J. Jewett versus Colin D. Casciano. Argument not to exceed 15 minutes per side. Mr. Bendure, you may proceed for the appellant. Thank you. Good afternoon. May it please the court. Mark Bendure appearing on behalf of plaintiff appellant Nathan Jewett. The principal issue presented in this case is whether a punch in the face constitutes a willful and malicious injury for purposes of dischargeability under the bankruptcy code. The trial court found that the punch in this case was not willful and malicious. And my initial reaction was that was so counterintuitive, where could it have come from? And then as I looked through the judge's opinion, I believe it arises from the court's quotation to the Kuahu or whatever it is, I apologize for the pronunciation, on page nine, where the court says, the formulation triggers in a lawyer's mind the category intentional torts is distinguished from a reckless one. Intentional torts generally require that the actor intended the consequences of an act. And I think the court read that to believe that he had to intend the specific injury. There are about three quotations from page 14, I believe it is, of the opinion where he talks about Mr. Casciano not intending injury of gravity. That quotation, it seems to me, first of all, if you're talking about intentional torts, assault and battery is an intentional tort. And if you want to equate the two, certainly we fall under willful and malicious to the extent that that's synonymous with an intentional tort. I think what that quotation is getting at is something like this. You're on a dance floor, gyrating and everything else. That's your intentional act. You accidentally hit somebody who's dancing next to you. You don't intend the consequence. Therefore, it's not an intentional tort. It doesn't say, however, that you have to intend the specific injury that results. And we've cited in our brief numerous cases that hold that an assault and battery is an intentional tort, and it's both willful and malicious. In fact, a couple of the cases which we cite in our reply brief from the Ohio bankruptcy courts come right out and say it's virtually impossible to believe that you don't intend an injury. And in fact, the trial judge found that he intended to punch my client, Mr. Jewett. So now we get to the question of whether or not that's willful and by definition it is. It's willful, and the fact that you don't intend or know what the specific injury might be doesn't change the willful nature of the act, which is to intentionally punch somebody. With respect to the question of maliciousness, we have similar analysis. And in fact, we looked at the same factors and made the same findings and the same rationale on both of the two different prongs. We have in our brief cited what we believe to be many errors in the trial court's construction of the facts. Some of them simply not borne out by the record. Others against the most significant factual error that I think contributed to this is the judge said in substance, let's look at the uninvolved people and see what they have to say. And I think that's a very rational analysis when you've got two sides that have different accounts. Significantly, he says Mr. Scierra, the bootlegger's person who was observing it all, supported the defendant view. And if you look at Mr. Scierra's testimony, what he says is Mr. Jewett was standing up, which is itself an ambiguous statement, particularly in the context of a variety of other witnesses who indicate that he was in the process of starting to disengage from Mr. Petterson, having specifically announced in substance that it's over with, you know, let's call it a day. But aren't you asking us to essentially re-weigh the evidence and the credibility? No, not really. And I think my response is something like this. First of all, the deference that one provides to a trial judge necessarily assumes that his findings of fact are adequately and fairly based on the record. And in this not the least of which is the testimony regarding standing and the like. Even if there is some weight, some evidence, the standard of review is clearly erroneous, which by definition says there is some evidence, but the court is convinced on an overall reading of the record that it was wrong. So the fact that the judge says something is the it's based on the record, but it isn't prohibitive of an independent analysis by this court to see whether or not the record really does support those findings and to determine whether, even if there is some such evidence, it's clearly erroneous. And I'll give you one example. The judge puts considerable weight in Mr. Cassiano's testimony that he had heard that he was going to kick ass, I believe is the phrase. Interestingly enough, Cassiano is 7 feet away from this, and the testimony is that he comes up as plaintiff is disengaging to strike him. Cassiano says he heard that. Five other witnesses say no such thing, including two from his own side, including Mr. Sciarra, and when he gives his report to the police after having a week or so to think it up because he's left the scene, he says no such thing. So yes, is that said? Yes. But he never says when it was said, whether it was inside the bar 20 minutes before or anything of that nature. So that, I think, is where the judge says he repeatedly threatened to and implies that it just precipitated the punch. The record, frankly, just does not support that other than testimony at the time of trial, which is different from his own police report and everybody else. But even if one accepts that what Mr. Cassiano says is that it was said at some time before, and we've cited a couple of cases in our reply brief which hold that words do not completely overlaps or largely does. And the definition which is provided is that it is either in derogation of a duty or without good cause. I'm paraphrasing, but the important thing is there is a disjunctive or in the middle of that definition. The judge specifically found that he had a assault plaintiff, which again seems rather self-evident. And so that would satisfy the first part of it. So even if there was good cause, that wouldn't be a defense if we meet the first prong, which is in derogation of a duty. Okay, let's explore that. So let's say, okay, he did find, let's say, assuming the facts, let's say he found, the bankruptcy judge found that Mr. Cassiano did so in self-defense. Under your argument that self-defense would not negate any of that, that you'd never get to the self-defense issue? Well, first of all, I think that assault, committing an assault in self-defense are logically inconsistent. Because if it's self-defense, it's not an assault. Significantly, though, the trial judge never comes out and says self-defense. But if he had, let's look at what are the elements of self-defense under Michigan law. First of all, do you have a chance to retreat? Unquestionably he did. The judge found that to be the case and said, but the plaintiff probably would have chased him. There is not a single bit of evidence to support that. In fact, what Mr. Jewett had done was always in defense of his girlfriend in terms of coming in between them at the bar and turning around when she confronted the group. And so Cassiano had done nothing with her to give him cause for concern. Mr. Jewett had just announced disengagement from Petterson and had done so visibly. And certainly we know, or I think it's far, you know, if he had meant to do any harm to Petterson on top of him with the size advantage, he certainly would have done so. And he's disengaged. He's leaving. And the weight of the testimony is he is in the process of getting up, hasn't even stood up yet. Skira, the bootleggers person, says that he didn't see it coming. He wasn't looking at him, he didn't see him coming. So you're saying that there are no facts here that would support a finding of self-defense? Correct. Legally that is so. Even if you look at it, it's not reasonable. Let's say that hypothetically in his somewhat alcohol-induced situation, like all of them were, Mr. Cassiano had come to an unreasonable view that he was in some sort of jeopardy. That's not a basis for self-defense. Because it has to be both reasonable and honest under Michigan law. In addition, there is an obligation to retreat. I mentioned that. You have somebody who is defenseless, frankly. I mean, he's not clenching his fists. And also what we find is the testimony of Ms. Bostand, which the judge incorrectly, I suggest, found favored defendant, that you don't get injuries like this if someone is in a position to defend themselves. And you get additional force by punching downward, which is exactly the position Mr. Jewett would be in when he's attempting to rise. There is nothing, at least at that time, other than the fact that sometime in the bar in Bragadocio, perhaps, there was, you know, I'll kick yours, you kick mine, that sort of thing. Nothing to objectively indicate that my client was about to hit him. Certainly not legal justification for punching a man and creating this sort of damage when my client was not the aggressor. He was not the aggressor vis-a-vis Mr. Cassiano at all in this incident, other than, if you want to call it that, interceding between him and the girls in the bar. That's it. Isn't that an issue of state of mind, though, in which the bankruptcy judge concluded otherwise? If it's a reasonable state of mind, that's true. But you can't irrationally conclude that you are in imminent danger, that's the term, imminent danger, and use that to inflict disproportionate injury to somebody who hasn't touched you yet. Oh, I'll reserve the rest of my time. Thank you. Thank you, Mr. Prenier. Good afternoon. Mike Conlin on behalf of Colin Cassiano. The plaintiff in this case has the burden of proof by preponderance of the evidence to prove that this was a willful and malicious act under 523A6. Clearly, they didn't prove their case. Their brief brings up kind of nitpicking certain findings by the court, whether or not Mr. Judah played hockey in high school, or misleading the court with facts like somehow my client instigated a fight inside the bar when there's no evidence. The standard of the review, as the panel knows, is that you must affirm unless the findings are clearly erroneous and there's a definite and firm conviction a mistake has been made and deference is given to the bankruptcy court judge. Judge Opperman in this case, we spent two and a half days in trial. He allowed us to do closing briefs based on the transcripts that we ordered from the trial court. He did, and then he did a lengthy opinion going through the transcripts. There was a motion for rehearing. We did briefs on that. We had an hour-long oral argument, and the judge went through the transcripts a second time and came up with the same conclusion. So he carefully and thoughtfully went through all the testimony in this case, and he weighed the credibility. And they want to second guess how the judge basically interpreted the credibility of the witnesses and how the facts came in. And the other thing they emphasize in their brief is that they just want to focus on the punch itself, but they don't really want to focus on the rest of the facts. And in this case, I think it's important to set the scene and just freeze the moment. I'd like for the panel to freeze the moment where my client, Colin Cassiano, saw his friend on the ground after Mr. Jewett grabbed him by the lapels, threw his friend down on the floor, punched him once, twice, and with the forearm. That's Mr. Cassiano's testimony. And after he did that, he pops off Mr. Peterson and turns towards my client. That's when the punch was thrown. And what did my client do next? Mr. Cassiano, at that point, didn't punch or hit Mr. Jewett again. He went to the aid of his friend and helped him off the ground. So that happened in a split second. That was the testimony at trial. I was at trial. That's the testimony. It happened like that. They want to say somehow there was a timeout call. There's no evidence to support there was some kind of timeout. There's some self-serving testimony from the plaintiff that hostilities were over, but the judge didn't buy that. My client felt threatened. He has a right to protect himself. In fact, some of the witnesses that they testify, their experts, the boxing expert, Dr. Smith, said you're going to have adrenaline. When you're faced with fear, you're going to have adrenaline. That's what happened. It was just a split reaction. And in terms of feeling threatened, I'd like to talk about that. First of all, Mr. Jewett, he's a big guy. He's 6'1", 235 pounds. He's a stocky guy. He's a wrestler in high school. He may not have played hockey, but he's a wrestler. And Collin's slim, and he's 175 pounds, and the judge felt that was significant. I believe it was as well. Mr. Jewett admitted he had six to eight beers that night and a shot. We know alcohol fuels violence. The only thing I would criticize the judge on is they said that they were all intoxicated. There is no evidence in the record at all that my client was intoxicated. But Mr. Jewett admits he was intoxicated. He wouldn't have driven that night. Now, I want to rewind back inside the bar. It's near closing time of bootleggers, and Collin Cassiano and his friend Garrett Patterson approached the two ladies. And the testimony is that they were smiling. It was a jovial conversation. But it happened really quickly. My client testified. He basically said hi, and before he knows it, he gets basically slammed in the back. He feels a blunt force in his back. And he immediately backed up. He didn't want any part of it. So his hands are up, and I don't want to start anything. But that's the first encounter he has with Mr. Jewett is getting hit in the back. Some stranger out of nowhere comes out of the bathroom. Mr. Jewett admits he's upset and that he was trying to protect his girlfriend, but no one in a normal state of mind does that. And he tried to say, well, I slipped in between them two, but when I did the cross-examination of Mr. Jewett, he admitted he put 235 pounds into my client. So that's the first encounter with this person. My client is physically assaulted. In the alley, they go out in the alley. There's some trash talking. And the testimony is from Ms. Lindgren that my boyfriend's a hockey player. He's going to beat both of your asses. My client testified that Mr. Jewett says, I can beat both of your asses. And that's plural, meaning my client, Colin Cassiano, and Patterson. Mr. Patterson, in his police statement, says that. So there is testimony from someone other than Colin Cassiano that that was said. In fact, Mr. Jewett doesn't deny it. He says, I don't remember. I might have said that. He does not deny he said that. So that's a verbal threat. So the two groups are going down the alley. And they go their separate ways. So there's like a T. So the one group, the Jewett group, the plaintiff's group, goes to the right. They have a car waiting because they've been drinking and they're going to get a ride home. My client's group goes to the left. So everything's done. So no problem. Now, for some reason, Mr. Jewett and Ms. Lindgren come back. Jonathan Crispin, who also happens to be with our group, says he looked angry when he's coming back. So what happens next? Well, let me back up. Why did they come back? There's only one reason they're coming back, and that's to start a fight. So Ms. Lindgren proceeds to kick Garrett Patterson in the shins. Mr. Patterson puts his arm out, and there's a dispute over this. He puts his arm out and she falls down, whether she slipped or whatever. But he pushes out and she slips. So at that point, Mr. Jewett basically says, okay, you hit my girlfriend, now I'm going to beat both of your asses. That's the testimony from my client. And if you think about it, he was jealous when they were just talking to his girlfriend. Now he thinks his girlfriend's been thrown on the ground. So imagine how upset he was. He tries to say, well, gee, I'm just a peacemaker, but that's just not rational in this case. He's upset. They try to portray this as some kind of dancing on the ice between Patterson and Mr. Jewett, and he took him down softly. Well, again, my client testified that there were basically three punches, a right punch, left punch, and a forearm, and Mr. Patterson's head hit the concrete. Mr. Patterson testified that he was hit. So Mr. Jewett clearly wasn't the peacemaker here. And what's interesting is he's got a bloody lip, a bloody lip and a bloody nose. Where did that come from? Mr. Crispin, Jonathan Crispin, the judge doesn't talk about it a lot, but he doesn't know my client. He's met him once. He's a neutral observer. He hasn't seen my client since. Bloody nose, bloody lip. My client sees a bloody nose and a bloody lip. Mr. Patterson says he was hit. He's got a bloody nose and a bloody lip. How did that get there? A police observed Mr. Patterson, later interviewing him, and noticed a bloody lip. So what we have is basically the Jewett group. There's three assaults before my client did anything, three assaults. The inside-the-bar assault, the Lindgren kick, and then the Jewett takedown and punches, which is not just one punch. It was multiple punches, and Judge Opperman did not buy that Mr. Jewett was some kind of peacemaker, and he's the finder of fact. And the judge also, I think, makes a good point in his opinion, is Colin has been the peaceful bystander this whole time. That's not a dispute. There's no dispute here. He didn't do anything until he felt threatened. He didn't retaliate in the bar. He didn't make any verbal trash-talking, nothing. So is it your position that he was acting in self-defense? He was acting in self-defense. He had just caused a risk. Did the bankruptcy judge make that finding? Yes. The finding is reasonable belief of imminent danger. In the opinion, Judge Opperman says he was at a risk of harm. He indicated that the plaintiff was willing to harm him in the first encounter, given when he saw Jewett do to Patterson easily, he'd look to Cassiano next. And he says the defendant was placed in a position of having to defend himself. Now, Mr. Bender misquotes the law, Michigan law. They put this in their reply brief that there's some duty to retreat. There is no duty to retreat unless you're using deadly force. And I didn't have a response or an opportunity to reply to their reply brief, but under Michigan law, it's MCL 780.972 subsection 2, says there is no duty to retreat unless you're using deadly force. That's the law in this case. Now, Mr. Connell, at the beginning of your argument, you emphasized the plaintiff's burden to establish that it was a willful and malicious act. And I think you're taking a position that your client acted in self-defense and the bankruptcy judge so found. Who had the burden with respect to self-defense? The burden of proof, I'm talking about. I would suggest it's their burden of proof to find that it was willful and malicious. No just cause. So it's their burden. It's a very good question, and I don't know if the court focused on it, but it's their burden to prove the elements under 523A6. It's your position that it was the plaintiff's burden to establish no just cause and your client didn't have a burden of proof with respect to self-defense. But I do believe, as the evidence came in, my client did, based on what the court found, the testimony in, that he did actually carry that burden of self-defense and certainly met their burden that there was just cause here. And there's one of the, let me find something here. They're kind of quibbling with the different testimony, and the Sixth Circuit law is if there's two views of the evidence in a case, if two views of the evidence in a case are permissible, the choice between those views made by a fact finder is not clearly erroneous. So there's two views. Judge Opperman was correct in, again, weighing the credibility. He didn't make any mistake. There should have been nothing here where he made a mistake. The one mistake he made was on the hockey, the issue of whether he was a hockey player. He was a wrestler. The cases they cite are distinguishable. They talk about extreme facts where someone's not provoked. There's no self-defense. They cite a lot of cases that are either pre-Geiger or insurance cases that had to do with intentional acts. Again, Geiger said the actor has to intend the consequences of the act, not just the act itself. So are you arguing that he had to intend to break his orbolo or whatever it was, his eye socket? Well, that's the law. You have to intend the consequences of the act. And Judge Opperman, what he saw, and I think he's correct, he said, number one, again, this is a split-second decision reaction to throw a punch. He didn't know he was going to land a punch. As Judge Opperman correctly said, he had no fight experience. And the testimony is he didn't know what he was doing. There is no testimony that he intended that act. In fact, Mr. Jewett didn't realize he was hurt that bad. He didn't take an ambulance that, even ask for an ambulance, admit he was hurt. So there's no evidence that Cassiano knew punching a player would cause the injury. Just one punch, then he aided his friend. Judge Opperman said, yeah, he might have slowed him down, but it's an infrequent injury. This is not, you have to look at the facts of each case. I don't think there's any law that says if you just throw a punch that you're automatically willful. That's not the Geiger standard. So, again, I just want to finish with, because I have about 15 seconds. Mr. Jewett, you know, his testimony I don't think was very credible, and the judge saw it that way.  He doesn't deny threatening Mr. Patterson and Mr. Cassiano. Frankly, he doesn't deny taking Garrett down. He said in his police statement, I overpowered him easily. So looking at it from Mr. Cassiano's perspective, he was frightened, had a right to protect himself, and certainly was justified in this case, and the judge was correct. Thank you, Mr. Connelly. A couple quick factual observations. Counsel indicates that there is testimony that at the time he struck Mr. Patterson, he said, I'm going to kick your butts. I defy you to find anything like that in the record. And we cited it. What he says is it's some undisclosed time before that was said. Counsel says there was no dispute that Jewett was the aggressor in the bar. The two independent bootlegger employees whose statements were admitted as part of the police record both say that Cassiano and Petterman were trying to antagonize the man and woman and trying to start a fight. That's the testimony from the impartial witnesses. So I think Counsel is stretching it when he says there's no testimony or no evidence to the contrary. In terms of the legal issue of self-defense, our position is that that is an affirmative defense. I believe that to be the case in civil litigation. Criminal litigation may be different. But if the plaintiff provides a prima facie showing of assault, it's our view that the burden is imposed upon the defendant to prove self-defense. And I would stress the judge never came right out and said that. Counsel indicates that there's nothing that says just punching somebody is necessarily willful. We cite it on page 14 of our brief case that says, when one physically hits another with enough force to break another's jaw, an alternative, a plausible alternative, is all but impossible to discern. In another case put it, one person does not strike a blow to another person's face without intending to injure the other person. And that is the core legal error we suggest that the trial judge committed. He says on page 14, there's no evidence that defendant knew that punching plaintiff at this location would cause the resulting injury. That's not necessary. If he intends to do some injury, whether it's to stop him or anything else, that is willful. Likewise, the judge goes on to say that there's no evidence that defendant knew his act would cause injury, much less the type of injury. So that, I think, is the legal error. Over and apart from the factual misconceptions, that is the legal error in the judge's analysis, which this court reviews de novo. And that is to say, when you intentionally punch someone in the face, can you now say, I didn't, you know, I broke his bones, I committed traumatic brain injury and everything else, but, gee, I didn't think anyone could be hurt just by punching him in the face. That is what the judge bought into. And that was the argument that defendant offered at trial. And that is plain legally wrong. And regardless of the facts, which I invite you to review the transcript and to review the record and to review the briefs, because we covered it at length, but wholly apart from that, we suggest that the legal error, as well as the burden of proof on self-defense, would justify reversal,  Thank you very much. The bankruptcy appellate panel now stands in recess.